United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Valentina Oulia, Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-25110-Civ-Scola |
| ) | |
| Florida Department of ) | |
| Transportation, Defendant. ) | |

### Order on Defendant's Motion for Summary Judgment

This matter is before the Court on the Defendant's motion for summary judgment. (Mot., ECF No. 128.) The Plaintiff timely responded (ECF No. 132) and the Defendant replied. (ECF No. 136.) Upon review of the record, the relevant caselaw, and the parties' submissions, the Court **grants** the Defendant's motion. (**ECF No. 128**.)

**1.   Background**

Plaintiff Valentina Oulia was employed by Defendant Florida Department of Transportation for three-and-a-half months and she alleges that the Defendant violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) by discriminating and retaliating against her. (Second Am. Compl., ECF No. 53; Oulia Aff., ECF No. 131-2 at ¶ 5.) The Plaintiff worked for the Defendant from June 15, 2018 until October 1, 2018. (Oulia Aff., ECF No. 131-2 at ¶ 5.) The Defendant's reasoning for firing the Plaintiff is that her work performance was poor. On June 25, 2018, Ms. Martinez, the Plaintiff's supervisor, followed up with the Plaintiff on the status of eight contracts that were not timely reviewed. (Def.'s Stmt., ECF No. 127 at ¶ 26.a.) On July 12, 2018, the Plaintiff "made another mistake regarding leave payouts," "which led to Ms. Oulia to 'ask for forgiveness and resubmittal of [a] corrected Leave payout report." (Pltf.'s Stmt., ECF No. 131 at 6.) On July 16, 2018, Ms. Martinez e-mailed the following message to the Plaintiff: "Please note that for the last two weeks you have not provided me with the requested Friday weekly recap." (Martinez Aff. at Ex. Q, ECF No. 127-5 at 66.) The Plaintiff was terminated from her employment on October 1, 2018. (Oulia Aff., ECF No. 131-2 at ¶ 5.)

The Plaintiff claims that the real reason for her termination is her September 7, 2018 inquiry as to why a male was authorized to work overtime while she was not. On August 6, 2018, the Plaintiff emailed Ms. Martinez a request to work overtime. (Oulia Aff., ECF No. 131-2 at ¶ 30; Martinez Aff., ECF No. 127-5 at ¶ 20.) That request was denied. (*Id.*) In September of 2018, the

Plaintiff found out that a male employee, Mr. Huang, was receiving compensation for overtime while the Plaintiff's requests for overtime were denied. (Oulia Aff., ECF No. 131-2 at ¶ 19.) On September 7, 2018, the Plaintiff "specifically asked [her] manager, Ms. Gray, as to why Simon [Huang] was compensated for his overtime, but" the Plaintiff was not. (Second Am. Compl., ECF No. 53 at ¶ 19; Oulia Aff., ECF No. 131-2 at ¶ 20.) The Plaintiff did not inform the Court as to what answer she received. However, the answer was that Mr. Huang worked "on a time sensitive annual purchase card audit." (Huang Aff., ECF No. 127-4 at ¶ 8.) Mr. Huang stated that he was "not sure if [he and his coworkers] would be able to complete the work timely unless [they] were able to work a small amount of overtime." (Huang Aff., ECF No. 127-4 at ¶ 9.) Thus, Mr. Huang and his coworkers requested and were approved to work overtime consistent with Department policy. (*Id.* at ¶¶ 10-11.) Three other coworkers were approved for overtime during the same time period as Mr. Huang, two of whom were female and one was male. (Def.'s Stmt., ECF No. 127 at ¶ 17.) Indeed, one of the female employees earned more overtime pay than Mr. Huang. (*Id.* at ¶ 18.) The Plaintiff was not eligible to work on this time-sensitive project because she "had not yet been trained regarding purchasing cards, and was having difficulties mastering the tasks that she was then assigned to." (Martinez Aff., ECF No. 127-5 at ¶ 17.)

The Plaintiff alleged that on September 10, 2018, "Ms. Gray *promptly* reported the question of unpaid overtime to the supervisor, Ms. Martinez." (ECF No. 53 at ¶ 20) (emphasis added). When the Plaintiff was asked during her deposition, "Do you know if Ms. Gray spoke to [Ms. Martinez] at any point in time during that week [of September 7, 2018] about unpaid overtime," the Plaintiff did not provide a factual basis for that allegation and responded, "I don't remember." (Oulia Dep. 185:12-14, ECF No. 127-2 at 13.) When Ms. Martinez was asked during her deposition, "Do you recall speaking to Ms. Gray about [the Plaintiff]'s request as to overtime," Ms. Martinez responded, "That conversation never happened between me and Ms. Gray." (Martinez Dep. 44:3-6; ECF No. 127-11 at 3.) Ms. Martinez stated that until the onset of this litigation, she "was never made aware" that the Plaintiff asked Ms. Gray why Mr. Huang was entitled to overtime while the Plaintiff was not. (*Id.* at 44:7-11.) With respect to the Plaintiff's retaliation claim, the parties do not dispute that Ms. Martinez was the "decision-maker." (Pltf.'s Stmt., ECF No. 132 at 15.)

Mr. Huang is the Plaintiff's chosen "comparator" for purposes of her discrimination claim. As discussed below, their two positions are materially similar as analyzed under Eleventh Circuit law. The Plaintiff's discrimination claim is based on the premise that she was not paid overtime while Mr. Huang, her comparator, was paid overtime. The parties dispute whether the Plaintiff actually worked overtime, as opposed to merely requesting permission to work

overtime. Ms. Martinez did see the Plaintiff "on a couple occasions at work prior to her regular start time," but "the Plaintiff was not working at her desk during those times." Rather, the Plaintiff "was eating breakfast and putting on makeup, which . . . was not uncommon." Ms. Martinez also stated that she "would have assumed that the Plaintiff was making up for missed time during another part of the week," which would be inconsistent with formal policy but consistent with an "informal" flexibility in the office. (Martinez Aff., ECF No. 127-5 at ¶ 23.) The Plaintiff does not dispute that she "never reported working overtime on her timesheets that were submitted by the Plaintiff to Ms. Martinez for her approval." (Def.'s Stmt., ECF No. 127 at ¶ 34; Pltf.'s Stmt., ECF No. 131 at ¶ 34.)

2. **Summary Judgment Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

3. **Analysis**

   **A. Count I: Discrimination**

The Equal Pay Act prohibits an employer from discriminating "between employees on the basis of sex by paying employees of one sex at a lower rate than that at which he pays employees of the opposite sex 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions....'" *Mitchell v. Jefferson Cnty. Bd. of Educ.*, 936 F.2d 539, 546-47 (11th Cir.1991) (quoting 29 U.S.C. § 206(d)(1)).

> A *prima facie* case of an EPA violation is shown if an employer pays different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which are performed under similar working conditions. Once a *prima facie* case

> is demonstrated, to avoid liability the employer must prove by a preponderance of the evidence that the differential is justified by one of four exceptions set forth in the EPA. Those exceptions are: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. The employer bears the burden of proof for these affirmative defenses. The burden is a heavy one because the defendants must show that the factor of sex provided *no basis* for the wage differential. If the defendant fails to meet this burden, the court must enter judgment for the plaintiff. When the defendant overcomes the burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential. If plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial.

*Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (internal citations and quotation marks omitted).

### 1) The Plaintiff Has Failed to Make a *Prima Facie* Case.

As an initial matter, the Court finds that the Plaintiff has failed to meet her burden of showing that there was a wage disparity. It is undisputed that the Plaintiff's wages exceeded the wages of her comparator. (ECF No. 127 at ¶ 3.b.) Additionally, after drawing all inferences in favor of the nonmovant, the Plaintiff has not established that she did in fact work overtime. In support of her contention that "[i]t is undisputed that Defendant did not pay Plaintiff for her job, [*i.e.,*] overtime that she worked," the Plaintiff cites only to the second amended complaint and the Defendant's answer *denying* that the Plaintiff "worked in excess of 40 hours per work week, or reported more than 40 hours of work in any work week on her timecard." (Pltf.'s Stmt., ECF No. 132 at 12 (citing Second Am. Compl., ECF No. 53; Def.'s Answer, ECF No. 81 at ¶ 22.) It is axiomatic that at the summary judgment stage "plaintiffs can no longer rest on their allegations," much less a defendant's denial of the proposition asserted. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). Indeed, the Plaintiff affirmatively self-reported that she never worked more than 40 hours (*i.e.,* overtime) in any given workweek. (ECF No. 127 at ¶ 34.) Although Ms. Martinez stated that she saw the Plaintiff "on a couple occasions at work prior to her regular start time," Ms. Martinez explained that "the Plaintiff was not working at her desk during those times." (ECF No. 127-5 at ¶ 23.) Rather, when Ms. Martinez saw the Plaintiff at those times, the Plaintiff

"was eating breakfast and putting on makeup, which . . . was not uncommon" among Department employees. (*Id.*) The Plaintiff has established that she was, at times, physically present on workplace grounds outside of normal work hours. However, without having established that she in fact worked overtime, the Plaintiff's discrimination claim rests only on a denied request for permission to work overtime. (ECF No. 131-2 at ¶ 30.) The Plaintiff has cited no authority for the proposition that the denial of a request to work overtime, without more, is cognizable under the Equal Pay Act. Even if such a claim were cognizable, the Plaintiff has failed to rebut the Defendant's proffered reasons for the denial, as discussed further below.

The second step in the analysis is to determine whether the comparator, Mr. Huang, and the Plaintiff held "jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1069 (11th Cir. 2003). "The prima facie case . . . focuses solely on the primary duties of each job, not duties that are incidental or insubstantial, and, although formal job titles or descriptions may be considered, the controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir.1998) (citation and quotations omitted). While the parties quibble with certain elements of Mr. Huang's and the Plaintiff's respective job descriptions, the Court is persuaded that Mr. Huang is an appropriate comparator. They both worked in the financial services division, audited contracts and purchase cards, worked on invoicing, reported to managers who each had the same superior, Ms. Martinez, and earned approximately the same wages (although the Plaintiff's wages exceeded Mr. Huang's). (ECF No. 127 at ¶ 12.a-d.; Martinez Aff., ECF No. 127-5 at ¶ 17; Oulia Aff., ECF No. 131-2 at ¶ 8.) Additionally, the Plaintiff cites to an email sent approximately five months before the Plaintiff was hired in which the author wrote that "the duties of both positions will be identical." (ECF No. 131-3 at 8.) The Court agrees with the Defendant's position that this email message is not properly before the Court because it was not "authenticated by and attached to an affidavit" and, therefore, the Court is "not required to consider [it] in opposition to [the Defendant]'s motion for summary judgment." *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. 2010). Irrespective of the existence of this email, which the Court has considered in conjunction with the remaining evidence, the Court would reach the same result. Mr. Huang is an appropriate comparator.

### 2) The Plaintiff Failed to Rebut the Defendant's Showing That It Had a Valid Basis for the Wage Differential.

Even if the Plaintiff made a *prima facie* showing of an EPA violation, which the Court finds she did not do, the Defendant has shown that the purported discrimination was due to a factor not related to sex. Specifically, the Defendant established that Mr. Huang was authorized to work overtime because he (a) was working on a time-sensitive audit and (b) sought written pre-authorization pursuant to the Department's overtime policy before working overtime. (Def.'s Reply, ECF No. 136 at 8.) By contrast, the Plaintiff sought overtime approval to complete her training, which was protracted after she failed to pass many initial, open-book training exams. (*See* ECF No. 127-5 at ¶ 13.l. ("The Plaintiff failed several trainings, which only required the Plaintiff to pass an open book exam. This was the first time that I encountered any employees not passing these routine training modules."); *id.* at ¶ 20.) Thus, the denial of the Plaintiff's August 6, 2018 overtime request and the approval of Mr. Huang's overtime request are both attributable to legitimate reasons not based on sex.

Having put forth a valid defense to the purported discrimination, the burden shifted back to the Plaintiff who was required, but failed, to come forward "with affirmative evidence indicating that the proffered reason for the disparity is actually a pretext for sex discrimination." *Murray v. World Sav. Bank*, 215 F. Supp. 2d 1316, 1320 (S.D. Fla. 2002) (Dimitrouleas, J.) (quoting *Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir.1991)). The Plaintiff's failure in this regard was abject. She has not challenged the time-sensitive nature of Mr. Huang's assignment, much less come forward with affirmative evidence that Ms. Martinez denied the Plaintiff's overtime request as a result of sex discrimination. Upon a review of the entire record, the Court concludes that the Defendant has proven that the explanations for the differences between Mr. Huang's payments and the Plaintiff's income are valid and not pretextual.

### B. Count II: Retaliation

"The anti-retaliation provision of the Equal Pay Act, as incorporated into the FLSA, makes it unlawful for an employer to discharge or otherwise retaliate against an employee for filing a complaint or instituting proceedings related to the FLSA." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018) (citing 29 U.S.C. § 215(a)(3)). "To establish a *prima facie* case of retaliation, a plaintiff may show that (1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the

employee's activity and the adverse action." 906 F.3d at 1314 (internal quotations and citation omitted).

### 1) The Plaintiff Engaged in Protected Activity and Suffered Adverse Action.

The parties do not dispute that the Plaintiff engaged in activity protected under the EPA. The Plaintiff's protected activity took place on September 7, 2018, when "she asked her manager, Ms. Gray, why Mr. Huang was paid overtime, but she, Ms. Oulia, was not paid overtime." (ECF No. 53 at ¶ 19; *see also* Oulia Aff., ECF No. 131-2 at ¶¶ 19-20.) The parties do not dispute that the Plaintiff later suffered from an adverse action taken by her employer. On October 1, 2018, approximately three weeks after asking why Mr. Huang was paid overtime while she was not, the Plaintiff was terminated from her job at the Department. (ECF No. 131-2 at ¶ 5.) Without explanation, the Plaintiff also argues, for the first time in response to the summary judgment motion, that the "adverse employment action [was] drafting the 'diary' about the Plaintiff" that documented her work performance. (Pltf.'s Opp'n. ECF No. 132 at 14.) As a procedural matter, this argument is not properly before the Court. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). As a substantive matter, a diary that merely documents the Plaintiff's own failures does not constitute adverse employment action. *Wallace v. Georgia Dep't of Transp.*, 212 F. App'x 799, 801 (11th Cir. 2006) (holding that plaintiff failed show an "adverse employment action" as a "written reprimand" was not "a *serious and material* change in the terms, conditions, or privileges of employment") (emphasis in original). Accordingly, the "adverse employment action" for purposes of this motion is the October 1, 2018 termination.

### 2) The Plaintiff Failed to Show a "Causal Connection" Between the Protected Activity and the Adverse Action.

The parties disagree as to the "causal connection" between the established protected activity and the adverse action. In the Eleventh Circuit, the "causal connection" between protected activity and the adverse action may be shown where the Plaintiff "provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse . . . action." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir.

2003) (citation omitted). Thus, the threshold factual question is whether "the decision-maker, Ms. Martinez[]," was aware of the protected conduct before deciding to take the adverse action. (ECF No. 132 at 15.) It stands to reason that "[a] decision maker cannot have been motivated to retaliate by something unknown to [her]." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The Plaintiff has failed to show the requisite "causal connection."

Although the second amended complaint alleges that "Ms. Gray promptly reported the [September 7, 2018] question of unpaid overtime to the supervisor, Ms. Martinez on or about September 10, 2018" (ECF No. 53 at ¶ 20), the Plaintiff has not come forward with evidence to substantiate that allegation. Indeed, when asked during her deposition, "Do you know if Ms. Gray spoke to [Ms. Martinez] at any point in time during that week [of September 7, 2018] about unpaid overtime," the Plaintiff responded, "I don't remember." (Oulia Dep., 185:12-14, ECF No. 127-2 at 13.) When Ms. Martinez was asked during her deposition, "Do you recall speaking to Ms. Gray about [the Plaintiff]'s request as to overtime," Ms. Martinez responded, "That conversation never happened between me and Ms. Gray." (Martinez Dep. 44:3-6; ECF No. 127-11 at 3.) Ms. Martinez further testified that she "was never made aware" that the Plaintiff asked Ms. Gray why Mr. Huang was entitled to overtime while the Plaintiff was not. (*Id.* at 44:7-11.) The Plaintiff's inability to muster evidence establishing that Ms. Martinez, who the Plaintiff describes as the "decision-maker" (ECF No. 132 at 15), is fatal to her attempted *prima facie* retaliation claim. *See Shotz*, 344 F.3d at 1180 n.30; *Farrow v. West*, 320 F.2d 1235, 1248-49 (11th Cir. 2003) (affirming summary judgment on retaliation claim where plaintiff presented no facts to dispute decision-maker affidavit testifying to having no knowledge of protected activity).

### 3) The Plaintiff Failed to Show the Defendant's Reasons for the Adverse Action Were Pretextual.

Even assuming the Plaintiff established a *prima facie* case of retaliation, which she did not, the Defendant met its burden of proffering a legitimate reason for the adverse action. *Hornsby-Culpepper,* 906 F.3d at 1314 ("Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate reason for the adverse action.") (citation omitted). The Defendant has shown that the Plaintiff was terminated for poor job performance. For example, "[t]he Plaintiff did acknowledge that she made certain mistakes based on her own mistyping." (ECF No. 127 at ¶ 23.) The Court does not credit the Plaintiff's claim, raised

only in opposition to the motion for summary judgment, that "there were [sic] no acknowledgement of mistyping." (ECF No. 131 at ¶ 23.) When asked about her mistakes, the Plaintiff testified under oath during her deposition that there were "two mistakes due to my own mistyping." (Oulia Dep. 152:7-9, ECF No. 127-2 at 8.) The Plaintiff's claim is made even weaker by the fact that the Plaintiff's termination was in motion prior to the alleged protected activity. *See Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 911 (affirming summary judgment where plaintiff had history of performance issues prior to protected activity). The record shows that the Plaintiff had performance issues as early as June 25, 2018, when Ms. Martinez sent an e-mail to the Plaintiff following up on eight contracts that were not timely reviewed. (ECF No. 127-5 at 28-29; *see also id.* at 66 (7/16/2018 e-mail from Ms. Martinez to Plaintiff ("[F]or the last two weeks you have not provided me with the requested Friday weekly recap.").)

In the face of the Defendant's legitimate reasons for the adverse action, the Plaintiff has failed to meet her burden to "establish that the proffered reason was pretextual." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018). Moreover, "[a] reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation omitted) (emphasis in original). Simply put, there is no evidence in the record rebutting the Defendant's reasons for firing the Plaintiff. The Plaintiff has completely admitted to the truth of at least some of the Defendant's proffered reasons, as discussed above, and the Plaintiff has not shown that the real reason she was fired is because of her gender or her gender-related overtime inquiry.

### 4. Conclusion

Based on the foregoing, the Court **grants** the Defendant's motion (**ECF No. 128**). The Court directs the Clerk to **close** this matter and **remove** this case from the trial calendar. Any pending motions in this case are **denied as moot**.

**Done and ordered** at Miami, Florida, on April 30, 2020.

_____
Robert N. Scola, Jr.
United States District Judge